Rosario **BONGIOVANNI**, Tom Weida, Reginald Wilson, Seymour Yaeger, Gilbert Atamian, Inc., and Tivoli Theatre, Inc., Plaintiffs,

v.

Frank S. **HOGAN**, District Attorney for New York County, State of New York, Richard Beckler, Assistant District Attorney for New York County, State of New York, Ptl. Henry Hoffman, New York City Police Department and Ptl. Gerald Hughes, New York City Police Department, Defendants.

No. 69 Civ. 4850.

United States District Court,
S. D. New York.

Feb. 10, 1970.

Arthur L. Goldstein, New York City, for plaintiffs.

Frank S. Hogan, Dist. Atty. for New York County, by Michael R. Juviller and Herman Kaufman, Asst. Dist. Attys., for defendants.

## OPINION

TYLER, District Judge.

Plaintiffs bring suit under 42 U.S.C. § 1983 alleging that defendants violated their constitutional rights through the search of their theatre and the seizure of a print of the film "Muthers", various still photographs on display in the theatre, and the lenses of the projector. Plaintiffs seek the return of the film, photos, and lenses now in the possession of the defendants, and an injunction barring a state criminal prosecution, should the search and seizure be found constitutionally impermissible.

The plaintiffs are the operator and employees of the Tivoli Theatre, Inc., 839 Eighth Avenue, New York City. The film "Muthers" was shown at the theatre on February 14, 1969. On that day Judge William Ringel of the New York City Criminal Court attended the afternoon performance of the movie from start to finish; while in the theatre, he also observed a number of still photographs on display there. Later that evening, Judge Ringel issued a search warrant authorizing police officers to seize both the film and the photographs. At the time of the seizure, plaintiffs Bongiovanni, Wilson and Yaeger were placed under arrest for the crime of obscenity. N.Y.Penal Law McKinney's Consol.Laws, c. 40, § 235.05 (McKinney 1967).

The warrant issued by Judge Ringel was based on his *ex parte* judicial determination that the material to be seized was obscene within the meaning of Section 235.05 of the New York Penal Law. Concededly, there was no preliminary adversary hearing and adjudication on the question of obscenity.

## I.

### *Return of the Film*

In all important aspects, the case at bar repeats the factual pattern of Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), in which a similar motion for the return of the film was made and granted. On the basis of the ruling in *Bethview*, the motion for the return of the film is granted.

## II.

### *Return of the Photographs*

In arguing against the return of the photographs, defendants ask the court to make a distinction between seizure for purposes of evidence and seizure that stifles expression presumptively protected by the First Amendment. Defendants base their argument on United States v. Wild, 422 F.2d 34 (2d Cir. 1969), a case charging conspiracy to use the mails to convey and deliver obscene material, including photographs. In *Wild*, the defendants, citing A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and Marcus v. Search Warrants, etc., 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed. 2d 1129 (1961), sought reversal of their conviction on the ground that photos seized at the time of their arrest without a preliminary adversary hearing on the question of obscenity were improperly admitted at trial. The circuit court distinguished *Wild* from those cases:

"These cases are inapposite since they involved massive seizures of books un-

der state statutes which authorized warrants for the seizure of obscene materials as a first step in civil proceedings seeking their destruction. The seizures in this case were of instrumentalities and evidence of the crime for which appellants were indicted and lawfully arrested. We do not believe *Marcus* and *Quantity of Books* can be read to proscribe the application of the ordinary methods of initiating criminal prosecution to obscenity cases."

It is difficult to perceive why seizure in a civil instead of criminal case, or by a federal rather than the state government, or incidental to an arrest rather than on a warrant would make any difference to the impermissible "chilling effect" of seizure on expression which has not been shown in all likelihood to fall outside constitutional protection in an adversary hearing. Certainly the ruling of the Court of Appeals in *Bethview* demonstrates that no line will be drawn between civil and criminal or between federal and state actions. The reasoning in United States v. Brown, 274 F.Supp. 561 (S.D.N.Y.1967), still appears sound: the government cannot make a "chilling" seizure permissible by removing the label of a search warrant and pasting on that of seizure incidental to a lawful arrest. In any event, the seizure in the case at bar was based on a search warrant and was not simply incidental to an arrest.

As the Court of Appeals made clear in its denial of the petition for rehearing in United States v. Wild, 422 F.2d 34 (2d Cir. Feb. 2, 1970), the thrust of this paragraph in the original opinion goes to two points: the massive quality of the seizure and the necessity of reversal if improperly seized evidence is used at trial. The exact outline—and even the existence—of a constitutionally permissible seizure for the purposes of obtaining evidence which is not tainted by a "chilling effect" on expression lies hidden in the pregnant prose of *Marcus* and *A Quantity of Books*. Lower courts have struggled with the problem, *cf.* Gregory v. DiFlorio, 298 F.Supp. 1360 (W.D.N.Y. 1969) *with* Rage Books, Inc. v. Leary, 301 F.Supp. 546 (S.D.N.Y.1969). The results rest largely on individual susceptibilities to cold and perhaps ultimately the resolution of the problem must be left to the discretion of trial courts. Fortunately, the reasoning of the court in *Bethview* allows me to avoid the icy metaphysical task of deciding how massive a seizure must be before it becomes impermissibly "chilling". In *Bethview*, the court pointed out that the large number of viewers who might see the movie made its seizure the equivalent of a massive seizure of books and therefore impermissible. Naturally, anyone who sees "Muthers" would also be able to see the still photographs on display in the theatre, and so the seizure of the photographs must be as impermissibly "chilling" as the seizure of the movie print. The case at bar does not arise after conviction so that the reasoning in the second *Wild* opinion on the question of reversal does not apply.

The still photographs must be returned.

### III.

#### *Return of the Projector Lenses*

The evidentiary value of the lenses at an obscenity trial seems minimal at best, but the effectiveness of such seizure in restricting expression is comparatively substantial. To allow the state to seize a publisher's printing press but prohibit it from seizing his books would be a barren fulfillment of the citizen's First Amendment rights. Such seizure makes a mockery of the rulings that we must approach the problem of obscenity with sensitive tools. Marcus v. Search Warrants, *supra*. The lenses must be returned to the plaintiffs.

### IV.

#### *Injunction Against the State Criminal Case*

Plaintiffs ask this federal court to enjoin the state criminal proceeding based on the constitutionally impermissible search and seizure. Under the doc-

trine of Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), federal courts have been reluctant to intervene in state criminal proceedings unless they are faced with an exceptional case in which the threatened injury to the plaintiff is clear, immediate, substantial and irreparable. This stringent standard was partially relaxed by the Court in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965):

> "[W]e hold that the abstention doctrine is inappropriate for cases such as the present one where, unlike Douglas v. City of Jeannette, statutes are justifiably attacked on their faces as abridging free expression, or as applied for the purpose of discouraging protected activities." At 489–490, 85 S.Ct. at 1122.

Plaintiffs in this case do not seek to challenge the statute itself, but rather address themselves to its application. It is clear that plaintiffs are engaged in presumptively protected activity and that the likelihood of a successful prosecution does not render less improper constitutionally forbidden search and seizure. 380 U.S. at 487, 85 S.Ct. 1116. The plaintiffs' crucial task is to demonstrate that the powers of the state were improperly used for the purpose of discouraging free expression. It is not directly stated in *Dombrowski* that "purpose" suggests a conscious plan or apparent pattern rather than an accidental and isolated event, but that, one assumes, would be the common reading of the formula in *Dombrowski*, a reading that is corroborated by the discussion of good faith prosecution that immediately follows the statement of the *Dombrowski* standard. 380 U.S. at 490, 85 S.Ct. 1116.

In the case at bar, plaintiffs do not offer any direct evidence that the police and prosecutors intend to apply the laws of New York State in a constitutionally impermissible manner. Plaintiffs, however, do direct the court to a series of searches for and seizures of allegedly obscene material under authority of New York law, and they argue that such a pattern establishes an improper purpose in the application of laws affecting free expression which would permit, if not require, this court to enjoin state criminal proceedings arising out of that pattern. At this late date, such evidence of a pattern cannot be lightly dismissed. Both state and federal courts time and again in recent years have been faced with factual situations involving seizure of impermissbly large amounts of allegedly obscene material without a preliminary hearing: United States ex rel. Mishkin v. Thomas, 282 F.Supp. 729 (S.D.N.Y.1968) (habeas corpus granted in case involving seizure in 1959 and 1960 in Manhattan of substantial amount of printed matter; seizure based on warrant conceded by state to be faulty); Evergreen Review Inc. v. Cahn, 230 F.Supp. 498 (E.D.N.Y.1964) (seizure in Nassau County of 21,000 copies of "Evergreen Review"; seized material ordered returned); Potwora v. Dillon, 386 F.2d 74 (2d Cir. 1967) (seizure in Depew, Erie County of approximately 7,000 books; return of all books, less five copies of each, sought and granted); East Village Other, Inc. v. Koota, 305 F.Supp. 1159 (E.D.N.Y. Feb. 13, 1968) (seizure in Brooklyn of 1,300–1,400 copies of tabloid; matter returned, except for a few specimens, by consent of the state); People v. Kozak, 56 Misc.2d 337, 288 N.Y. S.2d 692 (Crim.Ct., City of New York 1968) (improperly seized photographs suppressed); 208 Cinema, Inc. v. Vergari, 298 F.Supp. 1175 (S.D.N.Y.1969) (seizure in Westchester of film prints. In the reported decision, plaintiff sought to enjoin further arrests and prosecutions of plaintiff pending the eventual disposition of the action; injunction refused. In an unreported opinion, plaintiff sought the return of the films; granted in part and denied in part by the district court. 69 Civ. 1747 (S.D.N.Y. Aug. 8, 1969). In an unreported decision, the Court of Appeals reversed, granting the injunction and the return of all the films. 69 Civ. 1747 (2d Cir. Nov. 17, 1969)); Gregory v. DiFlorio, 298 F.Supp. 1360 (W.D.N.Y.1969) (two seizures in Niagara Falls involving 5,-

000 books and magazines in all; all seized material returned); Rage Books, Inc. v. Leary, 301 F.Supp. 546 (S.D.N.Y.1969) (seizure of books and magazines in Manhattan, no discussion of amount but all books and magazines in excess of six specimens of each ordered returned); Astro Cinema Corp., Inc. v. Mackell, 305 F.Supp. 863 (E.D.N.Y. Aug. 19, 1969) (seizure in Queens of print of motion picture, return of print denied); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969) (seizure in Nassau of print of motion picture; print ordered returned); Overstock Book Co., Inc. v. Barry, 305 F.Supp. 842 (E.D.N.Y. Oct. 31, 1969) (seizure in Suffolk County of 17,500 books, magazines, printed matter, and motion pictures; return of seized material ordered).

■ To put it tactfully, this is a depressing record for law enforcement agencies in New York State. Yet, in fairness to these agencies, there are other parts of the record that should be noted. First, impermissible seizures have not taken place in the same local jurisdiction repeatedly. Second, at least by 1968 the enforcement agencies (in *East Village Other*) recognized the illegality of mass seizure of printed material. That action named the District Attorney of Kings County and the Police Commissioner of New York City as defendants. Our attention has been drawn to only one disputed seizure of printed matter in New York City since that time, the episode which was the basis of the court's decision in *Rage Books*. It is unclear that that was, in fact, an impermissible seizure. Obviously, however, it is not a sufficient response to the law as it now exists that law enforcement agencies are willing to admit to illegal seizures without more; the seizures themselves must stop. But the admission made in *East Village Other* goes a considerable way to disproving that improper purpose in the application of state law which is the necessary basis for federal intervention. In sum, I conclude that plaintiffs here must show a pattern of improper application of state law which contradicts the public position on massive seizure taken by the local law enforcement agency and prosecutor in *East Village Other* or demonstrate the purposeful denial of some other protected right.

■ A showing of massive seizure is particularly difficult when it involves a print of a movie in the circumstances of this case. This seizure was made on February 14, 1969. Seizures on the same pattern were made in Westchester County on April 22, April 25, and May 10, 1969 and the motion for the return of the film was denied in the district court's unreported decision in *208 Cinema, supra*. That case was decided on August 8, 1969, and the judge ruled that the seizure was permissible since it was his opinion that sufficient safeguards had been afforded the exhibitor's First Amendment rights. A similar seizure was made on May 5, 1969 in Queens, and that seizure was the basis of *Astro Cinema, supra*. The latter case was decided in the Eastern District of New York on August 19, 1969, and the judge ruled that the seizure was permissible as the minimum evidence needed to support prosecution of the alleged offense. On May 6, 1969, a fourth seizure of the same type was made in Nassau, which became the basis of the decision of the Second Circuit in *Bethview Amusement, supra,* dated October 10, 1969. *Bethview*, of course, effectively overruled *Astro Cinema* and was reaffirmed in the Second Circuit's unreported opinion in 208 Cinema Inc. v. Vergari, 69 Civ. 1747 (2d Cir. Nov. 17, 1969). Since the seizure in the present case preceded the seizures in *208 Cinema, Astro Cinema* and *Bethview* and came at a time when, as those decisions show, the legality of such seizures was not settled, it would be inappropriate to interpret the seizures here as any purposeful defiance of the law. Consequently, I am unable to find that this seizure is part of a pattern of improperly massive seizures by law enforcement agencies.

■ Not surprisingly, plaintiffs further argue that the state courts have no intention of following the rulings of

the Supreme Court requiring an adversary hearing on obscenity before a "chillingly" massive seizure may be made, A Quantity of Books v. Kansas, *supra*, and that, therefore, return of the improperly seized material is the form of a remedy without its substance. They contend that New York courts will admit in evidence material seized after judicial scrutiny without a preliminary adversary hearing having been held. There is some evidence that this may have been the view of some state courts.[1] But I have been directed to no state court ruling explicitly holding that a defendant in an obscenity action is not entitled to an adversary hearing before a "chilling" seizure. *Bethview* very recently made it clear that the defendant has a right to such a preliminary hearing before the seizure of a film. I see no reason to assume that the state courts will not afford a defendant the rights secured by him by *A Quantity of Books* and *Bethview*. What form that preliminary adversary hearing should take is a matter for the state to determine, at least in the first instance. There are sufficient suggestions available so that it should not be difficult to fashion an appropriate and permissible form. Moreover, seizure is not the exclusive method for initiating an obscenity prosecution and the state may avoid the problems of a preliminary adversary hearing by seeking some other constitutionally permissible route. See Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969); Bethview Amusement Corp. v. Cahn, *supra*; Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969).

In summary, I refuse to grant plaintiffs' motion to enjoin the state prosecution of the obscenity charge against them. Plaintiffs' motions for the return of the film, the still photographs on display in the theatre, and the projector lenses are granted. Settle order accordingly.

1. *E. g.*, the list of principles in obscenity cases laid down in People v. Kozak, *supra*, does not include the necessity of a hearing on obscenity prior to a "chilling-ly" massive seizure; the normal procedure of the police recounted in *East Village Other*, *supra*, also fails to spell out this requirement.