PEOPLE v. LON JOHNSON

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—FREE SPEECH—MOVIES.

Freedom of speech and expression are constitutionally protected; movies, as a form of speech and expression, fall within this protection (US Const, Am 1).

2. CONSTITUTIONAL LAW—FREE SPEECH—OBSCENITY.

Obscenity is not protected by the First Amendment guarantees of free speech (US Const, Am 1).

3. CONSTITUTIONAL LAW—FREE SPEECH—OBSCENITY—MOVIES—ADVERSARY HEARING.

A prior adversary hearing is not necessary before a motion picture may be seized as obscene (US Const, Ams 1, 4).

4. SEARCHES AND SEIZURES—INCIDENT TO ARREST—MOVIES—OBSCENITY.

Seizure of a motion picture was lawful even though no prior adversary hearing as to the movie's obscenity had been held where the seizure was contemporaneous with a valid arrest for possession of an obscene movie with the intent to show it to others and was evidence of the crime for which the defendant was arrested (US Const, Ams 1, 4).

5. ARREST—OBSCENITY—MOVIES—CONSTITUTIONAL LAW.

Arrest of the defendant for possession of an obscene movie with the intent to show it to others was valid where the officers had viewed the entire movie and had obtained a warrant for the defendant's arrest based on affidavits containing a sufficient factual foundation for the crime for which the defendant was arrested (US Const, Am 1).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law §§ 342, 348.
[2] 16 Am Jur 2d, Constitutional Law § 349.
[3–9] 16 Am Jur 2d, Constitutional Law §§ 349, 370.

6. CONSTITUTIONAL LAW—FREE SPEECH—OBSCENITY—STANDARD.

A motion picture was constitutionally obscene where its dominant theme as a whole appealed to prurient interest in sex, it was patently offensive because it goes beyond contemporary community standards relating to the description of sexual matters, and it was utterly without redeeming social value (US Const, Am 1).

### DISSENT BY LEVIN, J.

7. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—MOTION PICTURES.

*A motion picture film being held for public exhibition may not be seized except pursuant to a search warrant issued following an adversary hearing (US Const, Am 1).*

8. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—MOTION PICTURES—INCIDENT TO ARREST.

*A motion picture film being held for public exhibition may not be seized as incident to a lawful arrest of the owner or the employee of the theatre in which it is being shown, because if the police were allowed in every case where an arrest is made to seize a film they would never be required to obtain a search warrant and thus the determination of obscenity would be made ad hoc by the police, not judicially (US Const, Ams 1, 4).*

9. CONSTITUTIONAL LAW—MOVIES—SEIZURE—RESTRAINT.

*The restraint present in the seizure of a film is far greater than the restraint present in the seizure of a single book, because a film is not directed to a single purchaser, it is aimed at all those who would be in the audience on the days that the film is scheduled to be shown (US Const, Am 1).*

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 June 5, 1970, at Detroit. (Docket No. 7708.) Decided December 10, 1970.

Lon Johnson was convicted of possession of an obscene movie with intent to show it to others. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Leonard Meyers,*
Assistant Prosecuting Attorney, for the people.

*Goodman, Eden, Robb, Millender, Goodman &
Bedrosian,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and LEVIN and
BORRADAILE,* JJ.

J. H. GILLIS, P. J. On June 9, 1969, defendant,
Lon Johnson, was convicted of possession of an
obscene movie with intent to show it to others.
MCLA § 750.343a (Stat Ann 1970 Cum Supp
§ 28.575[1]).

The facts are not in dispute. On November 6, 1968,
two Highland Park police officers went to the Hiland
Art Theatre to view a motion picture entitled "Of the
Same Gender". After viewing the entire movie, they
returned to the police station, conferred with the
prosecutor, and on the basis of the personal observa-
tion of the movie by the officers, warrants for the
arrest of defendant (the theatre manager) and
seizure of the film were issued by a municipal judge.

The affidavits filed by the officers with the recom-
mendation for the warrants were not conclusory.
Rather, the officers detailed what they had seen and
noted the length of time certain acts were performed
on the screen. After obtaining the warrants, the
officers returned to the theatre, viewed the film a
second time, and then executed the warrants.

The defendant objected to the seizure of the film
at examination and at trial. On appeal, he claims
that the denial of his motions to suppress the film as
evidence was error, and further, that the film was
not constitutionally obscene. We disagree.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant claims that an adversary hearing on the issue of obscenity must be held before the issuance of warrants in order to protect First Amendment freedoms of speech and expression.

The prosecutor argues that when a police officer reasonably believes that a misdemeanor is being committed in his presence, he is empowered, and duty bound, to make an arrest, and seize the evidence of the crime as an incident to that arrest.

It is elementary that freedom of speech and expression are constitutionally protected, and it is well established that movies, as a form of speech and expression, fall within this protection. *Joseph Burstyn, Inc.,* v. *Wilson* (1952), 343 US 495 (72 S Ct 777, 96 L Ed 1098) ; *Kingsley International Pictures Corp.* v. *Regents* (1959), 360 US 684 (79 S Ct 1362, 3 L Ed 2d 1512) ; *Jacobellis* v. *Ohio* (1964), 378 US 184 (84 S Ct 1676, 12 L Ed 2d 793). However, as with other mediums, courts have not given motion pictures absolute freedom. As in every other form of expression, obscenity is not protected by the First Amendment guarantees of free speech. *Roth* v. *United States* (1957), 354 US 476 (77 S Ct 1304, 1 L Ed 2d 1498) ; *Ginsberg* v. *New York* (1968), 390 US 629 (88 S Ct 1274, 20 L Ed 2d 195). Moreover, in *Burstyn, supra,* pp 502, 503, the Court noted the capacity for greater evil in motion pictures than in other forms of expression:

"It does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places. * * * Nor does it follow that motion pictures are necessarily subject to the precise rules governing any other method of expression. Each method tends to present its own peculiar problems."

Two decisions of the United States Supreme Court form the basis of defendant's argument that a prior

adversary hearing is required. In *Marcus* v. *Search Warrant* (1961), 367 US 717 (81 S Ct 1708, 6 L Ed 2d 1127), police obtained a general warrant to seize allegedly obscene material at five newsstands. The warrants were held invalid because they were issued on the strength of the conclusory assertions of a single police officer. In *A Quantity of Books* v. *Kansas* (1964), 378 US 205 (84 S Ct 1723, 12 L Ed 2d 809), the Court reversed an order for the destruction of books which had been seized pursuant to a warrant issued by a judge who had made only an *ex parte* determination of obscenity. Both cases established the trend requiring an adversary hearing on the obscenity issue prior to confiscation of books.

We find, however, no United States Supreme Court cases extending this requirement to motion pictures. *Lee Art Theatre, Inc.,* v. *Virginia* (1968), 392 US 636 (88 S Ct 2103, 20 L Ed 2d 1313) held that the seizure of a movie pursuant to a warrant issued on the strength of conclusory assertions of a police officer was invalid. Absent inquiry by the issuing magistrate into the factual basis for the officer's conclusions, the procedure there fell short of the constitutional requirements demanding recognition of freedom of expression. There is nothing in *Lee, supra,* to suggest that a prior adversary hearing is required. We note that the affidavits in this case were sufficiently detailed so as to meet the requirement found in *Lee, supra.*

While we recognize that other courts have extended the requirement of a prior adversary hearing to the medium of motion pictures,[1] we conclude that here the officers, after viewing the entire movie and obtaining an arrest based on affidavits containing a sufficient factual foundation for the crime charged,

---

[1] See, *e.g., Tyrone, Inc.,* v. *Wilkinson* (CA4, 1969), 410 F2d 639; *Metzger* v. *Pearcy* (CA7, 1968), 393 F2d 202.

were empowered to make a valid arrest. The seizure of the film was reasonable and lawful, being contemporaneous with a proper arrest and evidence of the crime. *People* v. *Bloss* (1969), 18 Mich App 410; 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 869.

We have viewed the movie and find that it is obscene in the constitutional sense as delineated by the United States Supreme Court. See *Roth* v. *United States, supra; Redrup* v. *New York* (1967), 386 US 767 (87 S Ct 1414, 18 L Ed 2d 515); *Memoirs* v. *Massachusetts* (1966), 383 US 413 (86 S Ct 975, 16 L Ed 2d 1); *Ginzburg* v. *United States* (1966), 383 US 463 (86 S Ct 942, 16 L Ed 2d 31). We find that the dominant theme of the movie as a whole appeals to prurient interest in sex, that it is patently offensive because it goes beyond contemporary community standards relating to the description of sexual matters, and that it is utterly without redeeming social value.

Affirmed.


BORRADAILE, J., concurred.


LEVIN, J. (*dissenting*). The disposition of this case which I think sound does not require an expression of opinion on the obscenity issue.

The weight of authority heavily supports the view that a motion picture film being held for public exhibition may not be seized except pursuant to a search warrant issued following an *adversary* hearing. The United States Court of Appeals for the second,[1] third,[2] fourth,[3] seventh,[4] and

---

[1] *Bethview Amusement Corp.* v. *Cahn* (CA2, 1969), 416 F2d 410, 412.

[2] *Cambist Films, Inc.,* v. *Duggan* (CA3, 1969), 420 F2d 687, 689.

[3] *Tyrone, Inc.,* v. *Wilkinson* (CA4, 1969), 410 F2d 639.

[4] *Metzger* v. *Pearcy* (CA7, 1968), 393 F2d 202.

eighth[5] circuits and a number of United States district courts have reached this result.[6]

The contrary authorities are decisions of United States district courts[7] and two decisions of State intermediate appellate courts, one in California[8] and one by another panel of this court.[9]

In four of the cases decided by the United States Courts of Appeals the films were seized, as here, at the same time that the defendants were arrested.[10] If the police need not obtain a search warrant when they seize a film incident to an arrest, then they need never bother to obtain a warrant—all they need to do is seize the exhibitor as well as the film.

The Supreme Court of California has also rejected the contention that a motion picture film being exhibited in a public theatre may be seized without a

---

[5] *United States* v. *Alexander* (CA8, 1970), 428 F2d 1169.

[6] *Cambist Films, Inc.*, v. *Tribell* (ED Ky, 1968), 293 F Supp 407, 409 (three-judge court) ; *Sokolic* v. *Ryan* (SD Ga, 1969), 304 F Supp 213; *Fontaine* v. *Dial* (WD Tex, 1969), 303 F Supp 436 (three-judge court) ; *Cambist Films, Inc.*, v. *Illinois* (ND Ill, 1968), 292 F Supp 185, 187; *Mandell* v. *Carson* (MD Fla, 1969), 309 F Supp 326, 328; *Abrams & Parisi, Inc.*, v. *Canale* (WD, Tenn, 1969), 309 F Supp 1360; *Bongiovanni* v. *Hogan* (SD NY, 1970), 309 F Supp 1364.

[7] See, *e.g.*, *Merritt* v. *Lewis* (ED Cal, 1970), 309 F Supp 1254; *Bazzell* v. *Gibbens* (ED La, 1969), 306 F Supp 1057.

See, also, *Entertainment Ventures, Inc.*, v. *Brewer* (MD Ala, 1969), 306 F Supp 802. The court ruled that an adversary hearing is not required if the magistrate views the film or makes a "constitutionally sufficient" inquiry into the officer's conclusions, and local law provides for a prompt adversary hearing after the seizure. But see *A Quantity of Books, infra*, fn 14, pp 212, 213 and cases cited in fn 12, *infra*, and accompanying text.

[8] *People* v. *De Renzy* (1969), 275 Cal App 2d 380 (79 Cal Rptr 777).

[9] *People* v. *Bloss* (1969), 18 Mich App 410, 414, 415. That we are not bound by the opinions of our colleagues, see *Warren* v. *Parole Board* (1970), 23 Mich 754, 758, fn 4.

[10] *Bethview Amusement Corp.* v. *Cahn, supra; Astro Cinema Corp., Inc.*, v. *Mackell* (CA2, 1970), 422 F2d 293; *Cambist Films, Inc.*, v. *Duggan, supra; Metzger* v. *Pearcy, supra.*

United States district court decisions recognizing that a prior adversary hearing is required even where the film is seized at the same time that the defendant is arrested include *Sokolic* v. *Ryan, supra; Fontaine* v. *Dial, supra; Cambist Films, Inc.*, v. *Illinois, supra; Abrams and Parisi, Inc.*, v. *Canale, supra; Bongiovanni* v. *Hogan, supra.*

warrant as an incident to the arrest of the owner and one of his employees. The Court reasoned:

"Within the precinct of the First Amendment, only the requirement that a search warrant be obtained prior to any search or seizure assures a free society that the sensitive determination of obscenity will be made judicially and not *ad hoc* by police officers in the field. It has always been recognized that 'the more important the rights at stake the more important must be the procedural safeguards surrounding those rights.' (*Speiser* v. *Randall* [1958], 357 US 513, 520, 521 [78 S Ct 1332, 1339, 2 L Ed 2d 1460]).*" Flack* v. *Municipal Court* (1967), 66 Cal 2d 981 (59 Cal Rptr 872, 879, 880; 429 P2d 192, 199.)[11]

In several cases the judicial officer who issued the search warrant saw the film before he issued it; this was held not to satisfy the requirement that there be an adversary hearing.[12] In any event, in this case the magistrate did not see the film, only the police officers who requested issuance of the warrant.

The people seek to distinguish *Marcus*[13] and *A Quantity of Books* v. *Kansas*[14] where the United States Supreme Court declared that a state may not seize publications allegedly obscene except pursuant to a search warrant issued following an adversary hearing conducted before the seizure, on the ground that in those cases a large number of publications were involved while here only a single film was seized. The asserted distinction elides the difference

---

[11] Similarly, see *Entertainment Ventures, Inc.,* v. *Brewer, supra,* p 809.

[12] *Tyrone, Inc.,* v. *Wilkinson, supra,* p 640; *Astro Cinema Corp., Inc.,* v. *Mackell, supra,* p 294; *Bethview Amusement Corp.* v. *Cahn, supra,* p 411; *United States* v. *Alexander, supra,* p 1170.

[13] *Marcus* v. *Search Warrant* (1961), 367 US 717 (81 S Ct 1708, 6 L Ed 2d 1127).

[14] *A Quantity of Books* v. *Kansas* (1964), 378 US 205 (84 S Ct 1723, 12 L Ed 2d 809).

between seizing a single copy of a book and seizing a motion picture film:

"The restraint involved in seizing a single copy of a book is exceedingly small; the dealer will usually have additional copies that can be sold.

"A film, however, is not directed to a single purchaser; it is aimed at all those who would be in the audience on the days that the film is scheduled to be shown. * * * Preventing this number of persons from viewing a film is certainly equivalent to seizing all copies of a book from the newsdealers involved in *A Quantity of Books* [*supra*]; in the functional terms we must use to balance the interest in suppressing obscenity against that of ensuring distribution of nonobscene views, the restraint here * * * is, if anything, more substantial than the seizure of less than 2000 books. * * * [I]f the State wishes to interfere substantially with distribution of films or books, it must first provide, as we have been instructed, an adversary hearing capable of affording a 'reasonable likelihood' that nonobscene films or books will reach the public." *Astro Cinema Corp., Inc.*, v. *Mackell* (CA 2, 1970), 422 F2d 293, 295, 296.[15]

If, as has been suggested, the State fears that the film might be destroyed or the offending scenes eliminated before an adversary hearing can be held, it might consider obtaining an *ex parte* restraining order enjoining destruction.[16]

---

[15] A police officer testified at the preliminary examination that as far as he knew the seized film was the only copy available to the defendant, and that the film had not been exhibited at defendant's theatre after the seizure.

[16] See *Bethview Amusement Corp.* v. *Cahn, supra,* p 412; *Astro Cinema Corp., Inc.*, v. *Mackell, supra,* p 296; *Tyrone, Inc.*, v. *Wilkinson, supra,* pp 640, 641; *Metzger* v. *Pearcy, supra,* p 204.

In this case there is no reason to believe that the film would be destroyed. The theatre in question has been showing films with a sexual orientation for a number of years.

The trial judge, in his opinion, said, "Indeed, it is quite clear that defendant was cooperative with representatives of the people but it is a practical consideration [*i.e.*, possible loss of the film] that should not be overlooked."

It has also been contended that unless the people can seize the film they will not be able to prosecute. See, however, *Tyrone, Inc.,* v. *Wilkinson* (CA 4, 1969), 410 F2d 639, and *Metzger* v. *Pearcy* (CA 7, 1968), 393 F2d 202, where the exhibitor was required to deliver to the prosecuting attorney a print of the film for use in the trial or in preparation for trial.

---

The police officer who obtained the warrant testified at the preliminary examination that he had been on the vice squad for nine years, that defendant Johnson's theatre had been showing adult films for three or four years, that during this period he had viewed films shown at defendant's theatre and this was the first occasion on which he had approached the defendant to complain about a film being exhibited. The officer acknowledged that he would not have had any difficulty in locating the defendant to notify him that the police were going to request a search warrant.