STATE, Respondent, v. AMATO, Appellant. [Case No. State 102.] *

STATE, Respondent, v. ROCKEY, Appellant. [Case No. State 103.] *

*Nos. State 102, 103. Argued December 1, 1970.—Decided February 2, 1971.*

(Also reported in 183 N. W. 2d 29.)

* Motions for rehearing denied, without costs, on May 28, 1971.

For the appellants there were briefs by *Garrigan, Keithley, O'Neal, Dobson, Elliott & DeLong* of Beloit, and oral argument by *Jerome Elliott.*

For the respondent the cause was argued by *William F. Eich,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J. The following issues are presented on appeal:

(1) Are the magazines involved in this appeal constitutionally not obscene as a matter of law;

(2) Has *Redrup v. New York* [1] overruled or limited pre-existing holdings on the government's authority to regulate obscene material;

(3) Was it necessary for the state to prove by affirmative proof that the materials involved in this appeal were patently offensive because they affronted community standards relating to the description or representation of sexual matters; and

---

[1] (1967), 386 U. S. 767, 87 Sup. Ct. 1414, 18 L. Ed. 2d 515.

　　(4) Was it prejudicial error to permit an assistant district attorney to testify regarding pending prosecutions.

*Obscenity as a matter of law.*

　　The question of obscenity is not exclusively one of fact. It has been termed a mixed question of fact and constitutional law. This court has recognized that a judgment of obscenity is not an ordinary issue of fact, but rather one also involving issues of legal and constitutional interpretation. *McCauley v. Tropic of Cancer* (1963), 20 Wis. 2d 134, 148, 121 N. W. 2d 545.

　　In the *McCauley Case* there was no verdict to review; and this court based its reversal on an independent reading of the book involved. The defendants contend that the magazines they were convicted for selling are similar to those involved in other cases where lower court obscenity convictions were reversed per curiam by the United States Supreme Court, and that, as a result, they are not obscene as a matter of law. In these cases, the reversals contain no discussion whatsoever, but only a bare reference to *Redrup, supra.*

　　In support of their contention that the three magazines here involved are, as a matter of law, not obscene, defendants describe the materials involved in several per curiam *"Redrup* reversals."  While a few of these cases—notably, *Central Magazine Sales, Ltd. v. United States* (1967), 389 U. S. 50, 88 Sup. Ct. 235, 19 L. Ed. 2d 49,—may have involved magazines bearing similarity to one of the magazines here involved, the other cases dealt with books, films and other items bearing no resemblance to the instant materials.

　　*Central Magazines Sales, Ltd. v. United States, supra,* dealt with an appeal from *United States v. 392 Copies of Magazine Entitled "Exclusive"* (D. C. Md. 1966), 253 Fed. Supp. 485, which was affirmed by the Fourth

Circuit in 1967 (373 Fed. 2d 633). In that case, the circuit court of appeals, at page 634, described the magazine as follows:

"*Exclusive* is a collection of photographs of young women. In most of them, long stockings and garter belts are employed to frame the pubic area and to focus attention upon it. A suggestion of masochism is sought by the use in many of the pictures of chains binding the model's wrists and ankles. Some of the seated models, squarely facing the camera, have their knees and legs widespread in order to reveal the genital area in its entirety. In one of the pictures, all of these things are combined: The model, clad only in a framing black garter belt and black stockings is chained to a chair upon which she is seated, facing the camera, with one knee elevated and both spread wide.

"We agree with the District Court that these apparently unretouched pictures of young women, posed as they are, are patently offensive and that the magazine *Exclusive* is obscene."

We think the magazines here involved are more than a collection of photographs of nude men and women which suggest sexual activity. In the instant case much of the material concerns itself with the depiction of sexual activity.

The jury in this case, after receiving instructions based on *Roth* [2] and succeeding cases, returned verdicts of guilty to charges of selling obscene materials.

An independent review of the magazines here involved reveals their similarities to, and differences from, the materials involved in the cases cited by appellants.

We conclude that the decisions cited by appellants form an insufficient basis for a ruling that these materials are not obscene as a matter of law.

*Question of modification of obscenity test.*

The appellants contend that the decision in *Redrup v. New York, supra,* modified the constitutional definition

---

[2] *Roth v. United States* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498.

of obscenity set forth in *Roth v. United States, supra,* and succeeding cases.

Prior to *Redrup* the accepted obscenity standard was known as the *Roth-Memoirs* test, under which materials could not be proscribed unless there was a showing that:

". . . (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 418, 86 Sup. Ct. 975, 16 L. Ed. 2d 1.

The only "pre-*Redrup*" modification of this rule was made in *Ginzburg v. United States* (1966), 383 U. S. 463, 474, 86 Sup. Ct. 942, 86 Sup. Ct. 969, 16 L. Ed. 2d 31, which added a theory that "in close cases evidence of pandering may be probative with respect to the nature of the material in question and thus satisfy the *Roth* test."

In 1967, the case of *Redrup v. New York, supra,* was decided. *Redrup* was actually a consolidation of three separate cases. The court had originally limited the scope of review in all three cases to the questions of scienter, vagueness of state statutes and prior restraint. Instead, the court did not reach the constitutional issues but merely recounted the differing views of the members of the court and stated, at page 771:

"Whichever of these constitutional views is brought to bear upon the cases before us, it is clear that the judgments cannot stand. . . ."

The court first noted that none of the cases involved violation of a statute aimed at protecting minors; none involved publication in a manner so obtrusive as to cause unwilling individuals to be exposed to the materials; and none involved any "pandering" of the materials

which the court found so significant in *Ginzburg v. United States, supra.*

The appellants contend that the decision in *Redrup* modifies the use and scope of the *Roth-Memoirs* test. They argue that magazines such as those involved in this case may not serve as the basis for obscenity prosecutions unless it can be shown that: (1) they were sold to minors; or (2) they were so obtrusively displayed as to cause unwilling viewers to see them; or (3) they were pandered in the manner described in *Ginzburg.*

We do not agree. *Redrup* is authority only for the proposition that the particular books and magazines there involved were not obscene. We think that if the *Redrup* decision was intended to reverse the *Roth-Memoirs* test, that obscenity is not constitutionally protected speech, the court would have so stated in no uncertain terms.

Appellants' argument has been specifically rejected in *Milky Way Productions, Inc. v. Leary* (S. D. D. C. N. Y. 1969), 305 Fed. Supp. 288, and affirmed by the United States Supreme Court.[3] In *Milky Way* the defendants contended that New York's obscenity statute was invalid because it contained only the *Roth* elements and did not include the other "test" claimed to be "added" to *Roth-Memoirs* by the *Redrup* decision. In rejecting this argument the trial court stated, at page 294:

"Plaintiffs misread the *per curiam* opinion in *Redrup.* As shown by the fuller opinions from which they derive, the supposedly additional, and allegedly essential, 'tests' are only *permissible* kinds of relevant *evidence* which may serve in a close case to tip the balance toward a finding of obscenity. . . .

". . .

"Nothing in *Redrup* changes the scope or effect of these added 'tests.' There is no support in that or any other decision of the Supreme Court for the view that

[3] *New York Feed Co. v. Leary* (1970), 397 U. S. 98, 90 Sup. Ct. 817, 25 L. Ed. 2d 78.

they must be satisfied *in addition* to the three tests of *Memoirs* before a finding of obscenity is permissible. The standard as laid down in *Memoirs* was cited with approval as recently as Stanley v. Georgia, 394 U. S. 557, 568, 89 S. Ct. 1243, 22 L. Ed. 2d 542 (1969). For a view of the precedents similar to ours, see United States v. 77 Cartons of Magazines, 300 F. Supp. 851, 853–854 (N. D. Cal. 1969)."

We conclude that *Redrup* is strictly limited to the question of obscenity of the specific materials there under consideration.

### *Proof required that material violates community standards.*

The appellants contend that in the absence of affirmative proof of "contemporary community standards" through expert testimony, the state cannot prevail. Several cases are cited in support of this contention. However, the appellants concede that some courts have held that affirmative proof on the issue of community standards is not necessary in obscenity cases. However, they contend the decisions are in the minority, most are pre-*Redrup* and in many of them there is a finding that the material involved is hardcore pornography, *i.e.*, material which depicts sexual activity.

We believe that the mere existence of the magazines here involved was sufficient without expert testimony to present a jury question.

We conclude that expert testimony is not required.

### *Admission of testimony concerning prosecutions in Milwaukee county.*

Appellants contend that it was error to permit Mr. George Lawrence, an assistant district attorney for Milwaukee county, to testify regarding pending prosecutions in Milwaukee county.

The defendants had entered evidence that magazines exactly like the three magazines involved in this appeal were purchased during the trial in several bookstores in Milwaukee, Wisconsin. The state then, on rebuttal, called witness Lawrence who testified that he checked the court records and made notes of some of the cases being prosecuted in Milwaukee county. The purpose of such testimony was to rebut any inference that such shops are accepted in the community. The trial court admitted the testimony for such limited purpose on the basis that the witness represented the office in charge of all such prosecutions, had made a personal search and inspection of the relevant records and documents, and thus had sufficient personal knowledge.

We think the best evidence rule is inapplicable here because the witness did not testify as to the exact contents of the documents; hence, the original documents were only collaterally involved. McCormick, *Evidence* (hornbook series), p. 412, sec. 200, states that the following factors are determinative of whether a document is only collaterally involved:

". . . Consequently, it is clear that where the effect of a writing is summarily or generally stated by the witness, without purporting to give its contents in detail, and the terms of the writing are unlikely to be disputed, or are not the subject of any important issue in the case, then such writing is regarded as a 'collateral' one, and the witness' statement of its effect without producing the writing itself, is permissible."

In any event, we fail to see in what manner the defendants' case was prejudiced under the trial court's rule.

*By the Court.*—Judgments and orders affirmed.