COURT, Plaintiff in error, v. STATE, Defendant in error.

*No. State 36. Argued March 5, 1971.—Decided June 29, 1971.*
(Also reported in 188 N. W. 2d 475.)

684

686

For the plaintiff in error there was a brief and oral argument by *Gordon Myse* of Appleton.

For the defendant in error the cause was argued by *William F. Eich,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J.   The defendant's initial objection was raised prior to the completion of the preliminary examination and is raised again on this appeal: That the complaint did not charge a crime because the complaint did not allege that the publications considered as a whole were obscene and that the complaint did not allege the element of *scienter*.  The pertinent part of the amended complaint charged that the defendant:

". . . did feloniously and intentionally sell and have in his possession for sale obscene or indecent pictures, to-wit: three (3) publications entitled 'Affair,' 'Lasses

& Glasses' and 'Cocktails', contrary to Section 944.21 (1) (a) of the Wisconsin Criminal Code."

We are satisfied from a reading of the complaint that the allegation was that the magazines, when considered in their entirety, were obscene and was not merely that individual pictures printed therein were obscene.

Scienter is, of course, a necessary element of the crime of sale or possession for sale of obscene materials, and it must be alleged in the criminal complaint. *Smith v. California* (1959), 361 U. S. 147, 80 Sup. Ct. 215, 4 L. Ed. 2d 205, and *State v. Chobot* (1960), 12 Wis. 2d 110, 106 N. W. 2d 286. Scienter was sufficiently alleged. Scienter is the knowledge or awareness of the nature of the materials alleged to be obscene.

Sec. 939.23 (3), Stats., defines the word, "intentionally." As so defined, it means that a defendant ". . . must have knowledge of those facts which are necessary to make his conduct criminal . . . ." The phrase, "feloniously and intentionally," used in the complaint, under the statutory definition, constitutes a sufficient allegation of an element of scienter. The complaint was not insufficient.

Additionally, the defendant contends that he ought not to have been bound over to circuit court for trial, since the evidence was insufficient to prove probable cause. We disagree. While it could be argued that the evidence adduced at the preliminary examination was insufficient to prove the charges against the defendant beyond a reasonable doubt, this burden of proof is not imposed upon the state in a preliminary examination. *State ex rel. Marachowsky v. Kerl* (1951), 258 Wis. 309, 45 N. W. 2d 668. A defendant may be bound over for trial to a court of general jurisdiction when from the evidence presented at a preliminary hearing it appears probable that a crime has been committed and that the defendant has probably committed it. *State ex rel. Woj-*

*tycski v. Hanley* (1945), 248 Wis. 108, 20 N. W. 2d 719, sec. 954.13 (1), Stats. 1967. We are satisfied that the evidence adduced at the preliminary examination met the standards required to prove probable cause.

There was testimony that the three magazines in question were purchased from "The Book Seller," which the defendant owned and operated. They were stapled shut and were placed on display in a section of the store designated, "You must be 21 to purchase." These facts give rise to the reasonable inference that the defendant was aware of the contents of the books, and the evidence was sufficient for the magistrate to have found that there was probable cause to determine that the defendant was aware of the contents of these particular magazines as required by *Smith v. California, supra.*

The defendant also argues that probable cause was not proved in the preliminary examination, because the state failed to produce sufficient evidence that the publications violated community standards of candor. We are satisfied that a perusal of the three magazines was sufficient for the committing magistrate to arrive at the inference that the materials were obscene and not in conformity with community standards. The defendant was properly bound over for trial.

The defendant also contends that this court, as a matter of law, should conclude that the magazines in question are not obscene. The defendant relies upon descriptions of the contents of publications not found to be obscene by various courts throughout the United States and therefore argues that since those publications, which defendant contends are more offensive than the ones before this court, have not been held to be obscene, that this court should, as a matter of law, reach the same conclusion in the instant case. We consider this yardstick inappropriate for precedential purposes for the same reason that we refuse to rely on damages awarded in

one case as a standard to be used in a subsequent case. The subjective nature of the material as well as the subjective conduct of the respective defendants requires an individual analysis in each case. We do not believe that courts, by finding particular materials obscene or not obscene, have set the guidelines for a subjective determination that other materials are obscene. The most that can be gleaned from these prior cases is that courts have attempted to set legal standards of an objective nature which must be applied in each case. The verbalization of the nature of an alleged piece of obscenity or the mode of describing a piece of obscenity is, like beauty, the product of the eye of the beholder. We are satisfied that any description of the magazines that are the subject of this litigation would merely reflect the predilections and the anathemas of the judge writing this opinion and would be no more accurate than the descriptions that are contained in the cases upon which the defendant relies. We refuse to use the subjective description of obscenity in prior cases as an objective standard to determine whether the items before us are obscene. The reader of this opinion would have a true appraisal even of the nature of these magazines only if we were to publish them *in extenso* as an appendix to our reports. This we obviously refuse to do. We quote the defendant's brief for a description of the magazines involved in this appeal:

"The publications in question in the instant case disclose nude female models during some occasions engaged in horse play with other female or male models. The breasts are freely revealed and in many instances, pubic hair can be seen. In all but a few photographs, however, the female genitalia is not prominently displayed or the focal point of the picture. The male genitalia are not generally exposed although the male models are nude or seminude."

We will supplement this description only by pointing out that, in addition to the pictures described by the

defendant, the magazines contain short articles of fiction in which the emphasis is upon violence and death and a series of incidents involving unconventional sexual relations under threat of death and culminating in the shooting and killing of the unwilling sex partner. They recount episodes of sexual abuse and murder. It is apparently these articles that the defendant asks that we consider, in addition to the photographs, to show the overall redeeming social value of these magazines.

We are satisfied that, in applying what we understand to be the applicable standards, this court cannot say, as a matter of law, the magazines are not obscene.

In *Roth v. United States* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498, the United States Supreme Court held that obscenity did not fall within the first amendment protection of freedom of speech and press. The obscenity test of *Roth* was capsulized in a plurality opinion written by Mr. Justice BRENNAN in *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 418, 86 Sup. Ct. 975, 16 L. Ed. 2d 1. Three elements were there held to be essential to find material obscene and therefore not within the ambit of first amendment protections. The three elements there stated were:

"(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

The *Roth Case, supra,* page 484, clearly stated obscenity was excluded from first amendment protections because it is "utterly without redeeming social importance" and not within the ambit of the constitutional provisions "fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." In *Jacobellis v. Ohio* (1964), 378 U. S. 184, 191, 84 Sup. Ct. 1676, 12 L. Ed.

2d 793, the *Roth* test was apparently altered in that Mr. Justice BRENNAN'S opinion states the converse of the *Roth* test, *i.e.*, that a matter is not obscene unless it is " 'utterly' without social importance."

This court in *State v. Chobot, supra,* interpreted the Wisconsin statute as calling for the application of the *Roth* test. The *Roth* test has also been cited with approval by this court in *McCauley v. Tropic of Cancer* (1963), 20 Wis. 2d 134, 121 N. W. 2d 545, *State v. Voshart* (1968), 39 Wis. 2d 419, 159 N. W. 2d 1, and *State v. Amato* (1971), 49 Wis. 2d 638, 183 N. W. 2d 29. We accept the *Roth* test of obscenity; and, under that test, we cannot say, as a matter of law, the materials are not obscene.

The defendant also argues that, since other court decisions have held materials not to be obscene when those materials evince greater "candor" than the instant case, those cases have established a national standard as a matter of law, and that, after examining the descriptions contained in those cases, we must conclude that the instant materials are not violative of a national standard. As stated above, we doubt that the descriptions of alleged pornography contained in law reports can adequately describe the nature of the materials, and we refuse to conclude that those cases are declarative of a national standard. We are satisfied that an individual determination must be made by the finder of the facts— a judge or a jury—bearing in mind the constitutionally approved guidelines of *Roth*. The mere fact that the *Roth* test states that the standards are to be "contemporary" is indicative that the United States Supreme Court did not intend that there be an ossification of mores or that decisions of the past should bind the present or contemporary scene. Moreover, the word, "community," is susceptible to varying interpretations. This court in *Chobot, supra,* and *Tropic of Cancer, supra,* has declined to approve the standards of a national community as has

been suggested in *Jacobellis, supra.* In *State v. Kois,* ante, p. 668, 188 N. W. 2d 467, of even date herewith we have again stated that "[w]e use the contemporary community standards prevalent in the state of Wisconsin," and express our doubts that there is an ascertainable national standard. We reject, therefore, the defendant's conclusion that what has been found to be acceptable in other states using other community standards is declarative of the standard to be applied in this jurisdiction even if we were able to determine the exact nature of the material from the descriptions that appear in opinions. It should be pointed out, however, that the trial judge in the instant case referred to a national standard in submitting his instructions to the jury. While we find such instruction inappropriate, the defendant has shown no evidence that he was prejudiced as a consequence of that instruction.

The defendant also relies upon *Stanley v. Georgia* (1969), 394 U. S. 557, 89 Sup. Ct. 1243, 22 L. Ed. 2d 542, for the proposition that obscenity is in some instances to be free of governmental control and that, if there is the right to possess obscene material, there must be the right to sell it. *Stanley,* of course, is inapplicable to this fact situation, and it is also clear that the *Stanley* decision did not impinge upon the standards of *Roth.* If any lingering doubts remained, and there should have been none, they were dispelled in *United States v. Reidel* (May 3, 1971), 402 U. S. 351, 91 Sup. Ct. 1410, 28 L. Ed. 2d 813, which pointed out that the *Stanley Case,* which held that the state had no power to regulate or prohibit the mere possession of obscenity by an individual in the privacy of his own home, did not disturb the holdings of *Roth.* We are satisfied that we cannot state, as a matter of law, that the magazines were not obscene. This case presented a factual question to be resolved by the finder of fact under proper constitutional standards.

The question of obscenity *vel non* is a factual matter to be resolved by the trier of fact under the constitutional guidelines of *Roth*. In *Chobot* we adopted the "finding-not-against-the-evidence approach" as the applicable standard of review. In *McCauley v. Tropic of Cancer, supra,* page 148, we retreated from the *Chobot* standard of review and stated:

". . . we deem the reading of the book to constitute the most weighty factor in the determination, and do not consider ourselves bound by the decision of the trial court, based on his reading of it."

This statement in *McCauley* was made after a discussion of various authorities which pointed out the "undesirability of a formula which puts the decision of one jury or one judge upon a difficult constitutional issue beyond the reach of reconsideration." *McCauley,* page 148.

On the other hand, *McCauley v. Tropic of Cancer* was not a criminal case but was an *in rem* proceeding for declaratory judgment that the book, *Tropic of Cancer,* was obscene. It could be argued that the method of review adopted in *McCauley* was, therefore, intended to be applicable only to the type of situation where the totality of the evidence was really the publication itself and where the appraisal of the obscenity question was wholly a matter of verbal interpretation, a field in which an appellate court professes definitive expertise.

However, in *State v. Voshart, supra,* page 427, footnote 14, we alluded to the standard of review appearing in the dissent of Mr. Justice HARLAN in *Roth v. United States.* Mr. Justice HARLAN'S views were quoted with the apparent approval of this court:

" 'I do not think that reviewing courts can escape this responsibility by saying that the trier of the facts, be it a jury or a judge, has labeled the questioned matter as "obscene," for, if "obscenity" is to be suppressed, the

question whether a particular work is of that character involves not really an issue of fact but a question of constitutional *judgment* of the most sensitive and delicate kind.' J. HARLAN, dissenting, *Roth v. United States, id.* at page 497."

Thus, we have apparently followed the HARLAN interpretation of the standard of appellate review, a standard which has been more recently and more fully stated by Mr. Justice BRENNAN in *Jacobellis, supra.* Therein, Mr. Justice BRENNAN, in an opinion in which Mr. Justice GOLDBERG joined, discussed whether the question of obscenity was purely factual and therefore should be left to a jury as a trier of fact. He concluded that, "whether a particular work is obscene necessarily implicates an issue of constitutional law," and stated that the issue of obscenity must ultimately be decided by "this Court." *Jacobellis, supra,* page 188. While we have made no pronouncement on this question since the *McCauley v. Tropic of Cancer Case,* except by way of dicta, it appears clear that we have followed the reasoning of Mr. Justice HARLAN in the *Roth* dissent and the reasoning of Mr. Justice BRENNAN in *Jacobellis.*

The viewpoint expressed in the plurality opinion authored by Mr. Justice BRENNAN has, however, not been without its critics, and it is difficult to determine whether that pronouncement is a constitutional mandate which leaves no latitude to the states in determining the fact-finding process by which an obscenity question is resolved. While Mr. Justice HARLAN'S dissent to *Jacobellis* makes it clear that he agrees with the statement of the reviewing responsibility of the United States Supreme Court, it is not clear that he would impose the same standards of constitutional fact finding upon a state appellate court. He states:

"The more I see of these obscenity cases the more convinced I become that in permitting the States wide, but not federally unrestricted, scope in this field, while hold-

ing the Federal Government with a tight rein, lies the best promise for achieving a sensible accommodation between the public interest sought to be served by obscenity laws . . . . and protection of genuine rights of free expression." (pp. 203, 204)

In the same case Mr. Chief Justice WARREN and Mr. Justice CLARK, dissenting, accept the rule of the *Roth Case,* stating, however, that on review the question is simply:

". . . a consideration only of whether there is sufficient evidence in the record upon which a finding of obscenity could be made. If there is no evidence in the record upon which such a finding could be made, obviously the material involved cannot be held obscene. . . . But since a mere modicum of evidence may satisfy a 'no evidence' standard, I am unwilling to give the important constitutional right of free expression such limited protection. However, protection of society's right to maintain its moral fiber and the effective administration of justice require that this Court not establish itself as an ultimate censor, in each case reading the entire record, viewing the accused material, and making an independent *de novo* judgment on the question of obscenity. Therefore, once a finding of obscenity has been made below under a proper application of the *Roth* test, I would apply a 'sufficient evidence' standard of review—requiring something more than merely any evidence but something less than 'substantial evidence on the record [including the allegedly obscene material] as a whole.' Cf. *Universal Camera Corp. v. Labor Board,* 340 U. S. 474." *Jacobellis, supra,* pages 202, 203.

We note also the dissent of Mr. Chief Judge LUMBARD in *United States v. A Motion Picture Film* (2d Cir. 1968), 404 Fed. 2d 196, 203, 204, wherein he stated:

"But the majority would take away from the jury the power to pass on these not too difficult and complicated questions by saying that obscenity is 'an issue of constitutional law' rather than an issue of fact with respect

to which the jury's finding has its usual conclusive effect. To me this simply means that juries are not to be trusted where a majority of the judges disagree with them.

"The action of the majority in nullifying the findings of the jury here goes beyond any case thus far decided in the obscenity area. No case is cited and I can find no case where the Supreme Court has set aside the verdict of a jury which has, under proper instructions, found present the three elements of obscenity as established by Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957) and Jacobellis v. Ohio, 378 U. S. 184, 84 S. Ct. 1676, 12 L. Ed. 2d 793 (1964). There is no reason to suspect that judges are in any better position to pass judgment on these matters than are jurors. Compare Mr. Justice BRENNAN'S remarks in Kingsley Books, Inc. v. Brown, 354 U. S. 436, 448, 77 S. Ct. 1325, 1331, 1 L. Ed. 2d 1469 (dissenting opinion) :

" 'The jury represents a cross-section of the community and has a special aptitude for reflecting the view of the average person. Jury trial of obscenity therefore provides a peculiarly competent application of the standard for judging obscenity which, by its definition, calls for an appraisal of material according to the average person's application of contemporary community standards.'

"With due deference to the very considerable intellectual attainments of my colleagues, I submit that when it comes to a question of what goes beyond the permissible in arousing prurient interest in sex, the verdict of a jury of twelve men and women is a far better and more accurate reflection of community standards and social value. The jurors are drawn from all walks of life and their less pretentious positions in the community qualify them to answer the questions put to them by Judge Murphy at least as well as circuit judges in their middle sixties who cerebrate in the ivory towers of the judiciary."

We agree with Mr. Chief Judge LUMBARD'S dissent and adopt the principle which he espoused. The determination of obscenity is a factual matter to be resolved by a finder of fact following constitutional guidelines, sub-

ject to review by an appellate court which seeks to determine merely whether the evidence underpinning the verdict was sufficient in view of the record as a whole.

We are fully aware of the possible consequences of leaving the cherished freedoms preserved by the first amendment in the hands of a jury which may on occasions be improperly swayed by considerations foreign to our concepts of American liberty. On the other hand, it is difficult to conclude that the political and artistic freedoms are even minimally threatened by leaving the initial fact determination to our venerated jury system. True, there is always the possibility that great works of art or literature may be momentarily suppressed by the overzealous. We will always have with us a fringe of our society that would conclude that the "Song of Solomon" or the "Canterbury Tales" is obscene.

We should point out, however, that it has been the experience of this court that it is rare indeed that the first amendment liberty of free speech is jeopardized in an obscenity prosecution (unless we adopt the position of Mr. Justice BLACK and Mr. Justice DOUGLAS that all forms of expression are equally and absolutely entitled to first amendment protections). That this has also been the experience in the United States Supreme Court is evidenced by the statement of Mr. Justice HARLAN concurring in *Ginsberg v. New York* (1968), 390 U. S. 629, 707, 88 Sup. Ct. 1274, 20 L. Ed. 2d 195, and dissenting in *Interstate Circuit, Inc. v. Dallas* (1968), 390 U. S. 676, 707, 88 Sup. Ct. 1298, 20 L. Ed. 2d 225, wherein he said, "In all except rare instances, I venture to say, no substantial free-speech interest is at stake, given the right of the States to control obscenity." We conclude that the free-speech interest will be protected by the courts of this state when juries are strictly enjoined to follow the constitutional standards of *Roth* in making the initial determination of obscenity and when such findings are sustained on appeal only when there is

substantial evidence, in view of the record as a whole, to reach that conclusion. *See R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 169 N. W. 2d 73, Mr. Justice Robert W. HANSEN'S concurring opinion, for a recent discussion of that standard of review. *See also:* sec. 227.20 (1) (d), Stats.

Where the matter has been tried before a judge, the record should show that there has been full adherence to the *Roth* standards and that the findings made are supported by substantial evidence in view of the record as a whole. While this court has confidence in its ability to review jury verdicts to insure that obscenity has been constitutionally found, it is apparent that the standards upon which the jury bases its verdict must be in strict conformance with approved constitutional guidelines, and proper instructions are mandatory. If we are to rely upon the jury's verdict in this case, we must conclude that the instructions to the jury were proper and the verdict was based upon sufficient evidence. Defendant attacks the instructions to the jury on several grounds.

An instruction requested by defendant was:

". . . to find the defendant guilty of the offense charged, you must find that the defendant knew the nature of the material and knew that the material was obscene."

The court rejected this instruction and advised the jury:

"Before the defendant may be found guilty of selling or having in possession for sale any obscene material the state must prove, by evidence which satisfies you beyond all reasonable doubt, that the defendant intentionally sold or had in his possession for sale obscene magazines . . . ."

Defendant argues that the instruction as given permits a finding without any evidence that the defendant was aware of the nature of the materials and that the

jury could return a finding if satisfied that the defendant sold or possessed material which was obscene.

We pointed out in discussing the preliminary hearing that *scienter* is a necessary element to every conviction for the sale of obscene material or the possession of such material for the purpose of sale. In *Mishkin v. New York* (1966), 383 U. S. 502, 511, 86 Sup. Ct. 958, 16 L. Ed. 2d 56, the United States Supreme Court said:

"The constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity."

The supreme court held that it was necessary that the defendant be aware of the nature of the material. Similarly, this court has recognized the necessity of the element of awareness in *State v. Chobot, supra*. The majority of this court concludes that the interpretation that a reasonable jury would place upon this instruction would be that the word, "intentionally," as used therein carries with it the connotation that the defendant be required to have knowledge of those facts necessary to make his conduct criminal. Such interpretation is reasonable, particularly where, as here, there is substantial evidence that the defendant by placing the books in an "adults only" section and stapling the covers evinced knowledge of the nature of the contents.

The writer of this opinion, however, believes that the instruction was defective, although, under the facts, constituting harmless error. The word, "intentionally," as used in the Wisconsin Criminal Code, is defined in the statutes. Sec. 939.23 (3), Stats. It would appear that a jury should not be expected to guess at the meaning of the words in the judge's instructions and at least be given the benefit of the statutory definition. Since we hold in this case that a jury's verdict if supported by sufficient evidence should be conclusive, it should be

mandatory that the instructions be free of error, and that we should not tolerate questionable instructions.

The defendant's requested instruction was erroneous. The state is not required to show that defendant knew the material was obscene. Defendant need only know the nature of the materials. *State v. Smith* (Mo. Sup. Ct., 1967), 422 S. W. 2d 50, certiorari denied, 393 U. S. 895, 89 Sup. Ct. 150, 21 L. Ed. 2d 176; *People v. Williamson* (1962), 207 Cal. App. 2d 839, 24 Cal. Rptr. 734. The trial judge properly refused the instruction as offered by the defendant.

Defendant also claims that obscenity was improperly defined. The trial judge instructed:

"Obscenity has also been defined as signifying that form of a morality which has relation to sexual impurity and which has a tendency to excite lustful thoughts; and, also, has been defined as material which has a substantial tendency to deprave or corrupt its readers or viewers by inciting lascivious thoughts or arousing lustful desires."

The defendant takes the position that this part of the charge improperly created the impression that the standards set forth in *Roth* were not exclusively the ones upon which the jury could reach its decision and that the jury was therefore entitled to supplement the instruction with its own view of the constitutional standards. We do not agree.

The first portion of the quoted section of the instructions is substantially a verbatim recital of the definition of obscenity approved in *Roth*. The second part is a repetition of the trial court definition of obscenity approved in *Roth's* companion case, *Alberts v. California* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498. Although this particular sentence, taken out of context from the instructions, did not fully encompass all of the elements of the *Roth* test, they are set forth explicity elsewhere in the instructions, and the jury

could not have been misled or the defendant prejudiced by the fact that the single sentence referred to did not encompass all of the elements.

The defendant also argues that the trial judge misapplied the *Roth* test because he stated:

"Material that describes or represents sex in various forms is not obscene if its social or literary values or importance outweighs the prurient or the offensive aspects of it. If the quality of the material has a significant and overbearing social or literary value it may not be found to be obscene merely because it offends community standards or appeals to prurient interests."

Defendant argues that this invites the jury to indulge in a weighing or balancing procedure prohibited by *Roth* and *Memoirs*. In *Memoirs, supra,* pages 419, 420, Mr. Justice BRENNAN, speaking for the plurality of the court, stated:

"The Supreme Judicial Court erred in holding that a book need not be 'unqualifiedly worthless before it can be deemed obscene.' A book cannot be proscribed unless it is found to be *utterly* without redeeming social value. This is so even though the book is found to possess the requisite prurient appeal and to be patently offensive. Each of the three federal constitutional criteria is to be applied independently; the social value of the book can neither be weighed against nor canceled by its prurient appeal or patent offensiveness. Hence, even on the view of the court below that *Memoirs* possessed only a modicum of social value, its judgment must be reversed as being founded on an erroneous interpretation of a federal constitutional standard."

It should be pointed out that even that statement carries with it a balancing element. The supreme court, though criticizing the Massachusetts court, did not hold that a material must be utterly without value to be found obscene. It qualified the type of value the material must have to be saved. The value must be social, and it must be redeeming. These are words that carry the implicit

connotation of a fact finder's value judgment. They are words that suggest a balancing of interests. The writer of this opinion admits, however, that he does not understand what the United States Supreme Court means, particularly in view of the transposition of the *Roth* conclusion (obscenity is not protected by the constitution because it has no value) to the *Memoir* conclusion (it is not obscenity if it has any value). Suffice it to say that the trial judge's instructions attempted a sensible analysis based on the *Roth* standards. We believe he succeeded.

Moreover, we are satisfied that the instructions taken as a whole make it clear that the jury was to be bound by the *Roth* test as stated in the plurality opinion of *Memoirs, supra,* page 418. In defining obscenity, Judge PARNELL stated, ". . . the material must be utterly without redeeming social value." We conclude that the jury was properly instructed in this respect.

Defendant also complains that the instructions were in error in that the jury was misled into believing that the standard to be applied was focused upon the possible effects of the literature upon minors rather than upon the average person. We do not agree. The trial judge stated that, in judging the effect upon the average citizen, the jury was to consider "the community as a whole":

". . . the men and women, young and old, the educated, the uneducated, the religious and the irreligious, and in the light of all the differences of age, culture, philosophy or attitudes that exist between them and which may affect or motivate them . . . ."

He went on to state:

"In this case you are not to consider the effects, if any, the material might have on children because the statute is not specifically directed to the protection of children."

During the course of the jury's deliberations a request was made for further instructions as to whether, "we

should consider minors involved at all in this case in general." The trial judge answered by an almost verbatim repetition of the first portion of the above instructions and concluded by saying that the statute was not directed to keep the material from children and that the jury was to be concerned with a fair cross section of the common, average person. We are satisfied that the trial judge did not prejudicially misstate the law. The jury was instructed in accordance with proper constitutional standards.

Additionally, defendant claims that the evidence was insufficient to support the verdict. Knowledge of the contents of the three magazines was denied by the defendant. The state relied on circumstantial evidence to prove the requisite awareness of the contents of the magazines. The defendant admitted personally selling the three magazines. He admitted that the magazines were marked with identification numbers before being put on the shelves, either by himself or by his clerk. He admitted that the magazines had been placed in a section of the store marked, "You must be 21 to purchase," and that because of the nature of the magazines they were stapled shut to prevent their casual perusal. Each of the magazines carried the notation, "Adults only." The evidence herein could lead to varying factual inferences—either that the defendant was aware of the contents of the magazines or that he was unaware, but in the exercise of prudence had used these procedures to segregate the literature. This presents a typical fact question that must be resolved by the trier of fact. Implicit in the jury's verdict is the question of the credibility to be afforded to the defendant's statement that he was unaware of the contents. We are satisfied that there was sufficient evidence to support the jury's finding in this respect.

The defendant also argues that there was no evidence to show that the three magazines offended contemporary

community standards of candor. The only evidence presented was that of a sociologist, who stated that magazines comparable to the three in question were available in communities across the country. His testimony did not reach the question of whether mere availability was determinative of conformance with community standards. In *Amato, supra,* page 645, we pointed out that the introduction of the publications and their presentation to a jury was sufficient evidence upon which the jury could reach a conclusion in respect to conformity with community standards. The rationale of that holding was also stated in *State v. Childs* (1968), 252 Or. 91, 104, 447 Pac. 2d 304, wherein the Oregon Supreme Court stated:

"The time has long passed when a juror's experience was limited to the happenings and attitudes of his local community. The average juror is constantly in touch with the national scene, exposed to national publications, movies, television and radio. . . . To say that the average juror is not cognizant of the contemporary national community and what it will tolerate is to deny the present mass dissemination of information."

In addition, a professor of English at Lawrence University, after a five-element analytical evaluation of the magazines, testified that none of them had any literary or social value. He declined, however, to express an opinion concerning the artistic value of the pictures that appeared in the magazines.

We are satisfied that the evidence was sufficient for a jury to find that the magazines were utterly without redeeming social value. We conclude that the jury's verdict was supported by substantial evidence in view of the entire record as submitted. In so doing we have not confined our review merely to the errors alleged by the defendant on this appeal but have examined the magazines themselves and the record as a whole and

have determined that all of the elements required by the *Roth* test have been satisfied.

The defendant also claims that the trial court abused its discretion by denying a motion for a change of venue. The motion was timely made and was supported by extensive affidavits which purported to show that attempts had been made by a local service club to influence the initiation of the instant prosecution. Included was a draft of a proposed Appleton city ordinance which was critical of the courts and the granting of continuances in pornography cases. The proposed ordinance stated such judicial conduct permitted "perversion for profit." The defendant testified that risque magazines had been surreptitiously placed among his stock, apparently for the purpose of "fixing" a case against him, and that, while he was attempting door-to-door sales of light bulbs to raise money for charitable purposes, doors were slammed in his face by people who refused to buy from him, because of his notoriety in the community in regard to the operation of his bookstore. Also included were a number of clippings, mostly from local papers, which presented varying points of view in regard to problems of obscenity law enforcement.

A motion for change of venue is directed to the discretion of the trial court, and the trial court's decision will not be interfered with unless an abuse is demonstrated. *State v. Clarke* (1970), 49 Wis. 2d 161, 181 N. W. 2d 355; *State v. Kramer* (1969), 45 Wis. 2d 20, 171 N. W. 2d 919; and *State v. Laabs* (1968), 40 Wis. 2d 162, 161 N. W. 2d 249. In the past, we have relied extensively on the judgment of the trial judge, whose daily familiarity with the sentiment of the community gives him a broader base for his decision than the printed record before us on appeal. We have pointed out, however, that there should not be undue deference to the trial judge's decision. *State v. Clarke, supra;* Ameri-

can Bar Association Project on Minimum Standards for Criminal Justice, *Relating to Fair Trial and Free Press,* Approved draft, pages 120–128. In *State v. Kramer, supra,* page 30, we stated the test on review of the trial court's exercise of discretion:

"If the evidence elicited, properly considered, gives rise to the reasonable likelihood that a fair trial cannot be had, it is an abuse of discretion to fail to grant a change of venue."

While the evidence in the instant case compels the conclusion that there was some prejudice in segments of the community against persons accused of selling obscene literature, the evidence does not warrant a reversal of the trial court's determination that the community was not so infected with prejudice as to give rise to the reasonable likelihood that a fair trial could not be had. It was not an abuse of discretion to deny defendant's motion.

The defendant also claims that he should have been permitted to waive trial by jury. The defendant made a timely motion to waive a jury trial and have the case tried to the court. The district attorney, however, refused to consent to the waiver.

Sec. 957.01 (1), Stats. 1967, permits a defendant to waive his right to a jury trial by statement in open court or in writing, provided the trial court approves and the district attorney consents. Defendant asks us to discard the requirement of the district attorney's consent in obscenity cases because of the complexity of the issues. It is sufficient to say that the requirement is a legislative enactment, which is consistent with the federal constitutional requirement. *Patton v. United States* (1930), 281 U. S. 276, 50 Sup. Ct. 253, 74 L. Ed. 854; *State ex rel. Sauk County District Attorney v. Gollmar* (1966), 32 Wis. 2d 406, 145 N. W. 2d 670. A jury trial cannot be waived without the consent of government counsel.

We conclude that the case was submitted to the jury on proper constitutional standards and that the evidence of record, when the record is considered as a whole, is sufficient for this court to sustain the jury's verdict that the defendant was guilty beyond a reasonable doubt.

*By the Court.*—Judgment affirmed.

HALLOWS, C. J. (*concurring*). I concur in the result but not in all the arguments made by the majority to sustain its decision. I disagree with the view that this court or any court cannot accurately describe obscene material without interjecting its subjective views. Obscenity, beauty, and other abstractions can be measured by objective standards. An objective standard may be the consensus of private ideas and opinion but nevertheless it is then objective and can be so described. I think the majority is confused in implying that because what is obscene to one person in his personal opinion may not be to another person for obscenity can be described objectively by either person. The *Roth* test attempts to lay down an objective standard for obscenity and common experience of mankind testifies to objectivity of standards. But this court sometimes affirms a finding of a jury on an objective standard while admitting on a subjective basis it would not make the findings.

My second objection to the majority is the phrasing of the scope of appellate review. This seems to be a battle of words because under any test of appellate review the material in the present case is constitutionally obscene. The majority has retreated from the standards of review adopted in *McCauley v. Tropic of Cancer* (1963), 20 Wis. 2d 134, 121 N. W. 2d 545, and in doing so emphasizes the importance and the appropriateness of fact finding by the jury. Fact finding by a jury under our system of jurisprudence is the same regardless of the scope of review. The jury finds the facts under proper instructions

of what is the applicable law. In reality, the jury applies the law to the fact, whether the law deals with negligence, libel, or obscenity. The majority comes back to the standard prior to *Tropic of Cancer* and the view that a jury properly instructed on the law can decide obscenity as well as the reviewing court. I dissented in a separate opinion and concurred in Mr. Justice BROWN'S dissent to the adoption of the new scope of review in the *Tropic of Cancer Case* and from the proposition that in constitutional cases the appellate court can independently make a finding of a constitutional fact. Of course, under any scope of review, the appellate court in Wisconsin is able to set aside a jury finding on the ground of lack of evidence to sustain by the verdict and on the ground of passion and prejudice.

The majority has not, however, returned to *State v. Chobot* (1960), 12 Wis. 2d 110, 106 N. W. 2d 286, for its scope of review but imports the statutory standard from the administrative law which might be less favorable to the integrity of the jury. The majority argues this scope of review, namely, substantial evidence, in view of the entire record as a whole gives the jury verdict more stability and immunizes it from probings of appellate courts. However, the test of *Chobot* and the usual scope of review of jury verdicts required a verdict to be sustained if there was any credible evidence to sustain the verdict and "to sustain" meant sufficient to meet the burden of proof which that type of case requires, which in most cases is the greater weight of the evidence to convince to a reasonable certainty. In other cases the quantum or quality of evidence had to be clear, convincing and satisfactory. I do not see much difference, if any, between substantial evidence in view of the entire record as a whole and the greater weight of the evidence to convince to a reasonable certainty. The point I make is that an appellate court should have one scope of re-

view for all types of cases and should not invent different appellate practices for different types of cases. The different burdens of proof at the trial level is sufficiently differentiating.

My last concern with the majority opinion is whether the scope of review is going to be very effective. The change in the scope of review is based on the premises that at the time of its adoption in *Tropic of Cancer,* the standard was not required by the majority of the supreme court but only suggested by Mr. Justice HARLAN. This, no doubt, was true at that time. But at this late date, I have grave doubts this court can avoid "an excursion into fact finding in the area of constitutional obscenity." The latest pronouncement in this area is in the opinion of Mr. Justice BRENNAN in *Rosenbloom v. Metromedia* (1971), 403 U. S. 29, 53, 91 Sup. Ct. 1811, 29 L. Ed. 2d 296, where he states:

"Aside from these particularized considerations, we have repeatedly recognized that courts may not avoid an excursion into factfinding in this area simply because it is time consuming or difficult. We stated in *Pennekamp v. Florida,* 328 U. S. 331, 335 (1946), that:
" 'The Constitution has imposed upon this Court final authority to determine the meaning and application of those words of that instrument which require interpretation to resolve judicial issues. With that responsibility, we are compelled to examine for ourselves the statements in issue and the circumstances under which they were made to see whether or not they . . . are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect.' (Footnote omitted.)

"Clearly, then, this Court has an 'obligation to test challenged judgments against the guarantees of the First and Fourteenth Amendments,' and in doing so 'this Court cannot avoid making an independent constitutional judgment on the facts of the case.' *Jacobellis v. Ohio,* 378 U. S. 184, 190 (1964). The simple fact is that First Amendment questions of 'constitutional fact' compel this Court's *de novo* review. See *Edwards v. South Carolina,*

372 U. S. 229, 235 (1963); *Blackburn v. Alabama,* 361 U. S. 199, 205, n. 5 (1960)."

While I personally favor a narrower scope of review, as my dissents in the *Tropic of Cancer* indicated, I am not now sure that the United States Supreme Court agrees with that view.

WILKIE, J. (*concurring*). The determination of whether a particular publication is obscene is a mixed question of fact and constitutional law on which an appellate court is obliged to make an independent determination. We cannot escape this responsibility here. In this state, this principle was announced in the *Tropic of Cancer.*[1] We most recently adhered to this concept of our appellate scope of review in *Amato.*[2] In recent years, the United States Supreme Court has observed this same principle in numerous cases; *e.g., Jacobellis v. Ohio.*[3] In *Jacobellis* the United States Supreme Court stated:

". . . We are told that the determination whether a particular motion picture, book, or other work of expression is obscene can be treated as a purely factual judgment on which a jury's verdict is all but conclusive, or that in any event the decision can be left essentially to state and lower federal courts, with this court exercising only a limited review such as that needed to determine whether the ruling below is supported by 'sufficient evidence.' The suggestion is appealing, since it would lift from our shoulders a difficult, recurring, and unpleasant task. But we cannot accept it. . . . Since it is only 'obscenity' that is excluded from the constitutional protection, the question whether a particular work is obscene necessarily implicates an issue of constitutional law. . . .

[1] *McCauley v. Tropic of Cancer* (1963), 20 Wis. 2d 134, 148, 121 N. W. 2d 545. *See also:* Annot. (1966), 5 A. L. R. 3d 1158.

[2] *State v. Amato* (1971), 49 Wis. 2d 638, 641, 183 N. W. 2d 29.

[3] (1964), 378 U. S. 184, 84 Sup. Ct. 1676, 12 L. Ed. 2d 793. *See also: Redrup v. New York* (1967), 386 U. S. 767, 87 Sup. Ct. 1414, 18 L. Ed. 2d 515, and cases following *Redrup.*

Such an issue, we think, must ultimately be decided by this court. . . ." [4]

This court, then, is obliged to make an independent evaluation of these magazines in terms of the proper test as to whether they are obscene. In making that determination, the proper test to apply (as the majority state) is prescribed by *Roth-Memoirs*. This test, which was followed most recently by this court in *Amato*, requires three elements to be present before a periodical is deemed obscene. These elements have been repeated many times and these elements are:

". . . (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." [5]

The United States Supreme Court has made it clear that in connection with (c) the test is whether the matter is "utterly without redeeming social value," and that the concept of balancing is erroneous. This, too, was made clear in *Jacobellis*. [6]

In judging the obscenity of a publication, the United States Supreme Court has declared that the standard to be applied is national and not of a single community. [7] The first amendment under the Federal Constitution is involved. This court is bound by every federal constitutional provision when applicable, as here, to the states. We are therefore obliged to apply federal standards on

---

[4] *Jacobellis v. Ohio, supra,* footnote 3, at pages 187, 188.

[5] *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 418, 86 Sup. Ct. 975, 16 L. Ed. 2d 1; *Roth v. United States* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498.

[6] *Supra,* footnote 3, at page 191.

[7] *See, e.g., Jacobellis v. Ohio, supra,* footnote 3, at pages 192–195.

the question of obscenity just as we would in matters of civil rights, search and seizure, self-incrimination, and jury trial.

In *Jacobellis,* the United States Supreme Court further stated:

". . . The court has regularly been compelled, in reviewing criminal convictions challenged under the Due Process Clause of the Fourteenth Amendment, to reconcile the conflicting rights of the local community which brought the prosecution and of the individual defendant. Such a task is admittedly difficult and delicate, but it is inherent in the court's duty of determining whether a particular conviction worked a deprivation of rights guaranteed by the Federal Constitution." [8]

Although the community standard was approved in *McCauley v. Tropic of Cancer,* the national standard was used here by the trial court and was also used by stipulation in the *Amato Case.*

I would affirm, not because the jury verdict is supported by substantial evidence in view of the entire record, but because of my independent examination of the publications and, in the light of the proper test of obscenity, I would find them obscene.

ROBERT W. HANSEN, J. (*concurring*). Obscenity or hard core pornography is not protected by the United States Constitution.[1] However, the meaning of obscenity must be constitutionally defined and the fact of obscenity properly established.

[8] *Id.* at page 194.

[1] *Ginsberg v. United States* (1968), 390 U. S. 629, 635, 88 Sup. Ct. 1274, 20 L. Ed. 2d 195, stating: "Obscenity is not within the area of protected speech or press." Quoting with approval from *Roth v. United States* (1957), 354 U. S. 476, 485, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498: "We hold that obscenity is not within the area of constitutionally protected speech or press."

*Constitutionally defined.*

Two definitions of the word "obscenity" have been approved by the United States Supreme Court as meeting constitutional criteria.

"Hard Core Pornography." One definition, held to be constitutionally antiseptic,[2] defines obscenity as "hard core pornography," in turn defined as that which ". . . focuses predominantly upon what is sexually morbid, grossly perverse and bizarre, without any artistic or scientific purpose or justification. . . ."[3] The writer would prefer to accept and adopt this "hard core pornography" definition as most clearly indicating what may be

---

[2] *Mishkin v. New York* (1966), 383 U. S. 502, 503, 86 Sup. Ct. 958, 16 L. Ed. 2d 56, upholding the constitutionality of a New York state anti-obscenity statute, sec. 1141 of the New York Penal Law, making guilty of a misdemeanor:

"'1. A person who . . . has in his possession with intent to sell, lend, distribute . . . any obscene, lewd, lascivious, filthy, indecent, sadistic, masochistic or disgusting book . . . or who . . . prints, utters, publishes, or in any manner manufactures, or prepares any such book . . . or who

"'2. In any manner hires, employs, uses or permits any person to do or assist in doing any act or thing mentioned in this section, or any of them.'"

[3] "'. . . It [obscene material covered by sec. 1141] focuses predominantly upon what is sexually morbid, grossly perverse and bizarre, without any artistic or scientific purpose or justification. Recognizable "by the insult it offers, invariably, to sex, and to the human spirit" (D. H. Lawrence Pornography and Obscenity [1930], p. 12) it is to be differentiated from the bawdy and the ribald. Depicting dirt for dirt's sake, the obscene is the vile, rather than the coarse, the blow to sense, not merely to sensibility. It smacks, at times, of fantasy and unreality, of sexual perversion and sickness and represents according to one thoughtful scholar "a debauchery of the sexual facility." (Murray, Literature and Censorship, 14 Books on Trial, 393, 394; see, also, Lockhart and McClure, Censorship of Obscenity: The Developing Constitutional Standards, 45 Minn. L. Rev. 5, 65)'" *People v. Richmond County News, Inc.* (1961), 9 N. Y. 2d 578, 586–587, 175 N. E. 2d 681. Cited in *Mishkin v. New York, supra*, fn. 4, at pages 506, 507.

considered obscene agreeing that ". . . it does describe something that most judges and others will 'know . . . when [they] see it' . . . and that leaves the smallest room for disagreement. . . ." [4]

"The *Roth* Test." A second definition of obscenity, held to be constitutionally valid, derives from the *Roth Case*,[5] capsulized in only the plurality opinion in *Memoirs* as requiring: " (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." [6] Where these three elements coalesce, under the *Roth* definition of obscenity, you have the distinct and identifiable obscenity which a state may constitutionally suppress, whether by civil or criminal sanction. It is this three-pronged definition which the majority opinion adopts for Wisconsin.

*Redeeming social value.*

The "hard core pornography" definition requires that the constitutionally obscene be "without any artistic or scientific purpose or justification." The *Roth* definition requires that the constitutionally unprotected be "utterly without redeeming social value." The intent and purpose of these two qualifying requirements are identical, but the interpretations given them have placed them poles apart.

The semantic trap into which the *Roth* definition has led was set by porno-critics and porno-defenders alike in

---

[4] Mr. Justice HARLAN, dissenting opinion, *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 457, 86 Sup. Ct. 975, 16 L. Ed. 2d 1.

[5] *Roth v. United States* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498.

[6] *Memoirs v. Massachusetts, supra,* at page 418. *See also: Ginsberg v. United States, supra,* at page 635 referring to ". . . the formulation for determining obscenity under *Roth* stated in the plurality opinion in *Memoirs v. Massachusetts. . . ."*

underlining the word "utterly." All that the supreme court majority had said in *Roth* was: "[I]mplicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance. . . ." [7] Commentators and less-than-majority United States Supreme Court opinions moved this entirely correct observation into a suggested requirement that obscene materials, under *Roth,* be "utterly without redeeming social value." Such near reversal of meaning is bad enough, but greater harm has come from underlining and stressing the word "utterly" in the plurality added requirement to a court majority approved observation.

The word "utterly" adds utterly nothing to the phrase, "without redeeming social value." To be without something is by definition to be completely without it. To be without money or a home is to be completely lacking in coin of the realm or roof over one's head. In colloquial usage, "to do without" means to get along entirely without. Redundancy adds neither emphasis nor dimension. Overstressing the word that adds nothing has led to overlooking the key word, "redeeming," in the added-to-*Roth* requirement that the obscene be "without *redeeming* social value." (Emphasis supplied.)

"Redeeming" means sufficient to redeem or rescue. To redeem is to ". . . make amends for, to offset; to atone for; as, to redeem an error." [8] In theology, it means to rescue from sin and its consequences.[9] Inherent in the definition is to ". . . make amends for; compensate for; make up for; as, the play was *redeemed* by the acting." [10] Something more than a whiff or a whisper of "social value" is required to make it a *"redeeming* social value."

[7] *Roth v. United States, supra,* at page 484.

[8] Webster's Elementary Dictionary, A Merriam-Webster Book, published by American Book Company (1941), at page 511.

[9] Funk & Wagnall's College Standard Dictionary of the English Language, published by Funk & Wagnall's Company, at page 953.

[10] *Id.* at page 953.

An orange floating in an open sewer does not change it into a fruit salad. A larded-in quotation from Plato or Aristotle is not enough to redeem what is otherwise completely obscene. A trailer with a few words on sex education, recited by an actor posing as a Danish doctor, does not redeem two hours of filmed filth and degradation. To be redemptive under the third of the expanded *Roth* requirements, the social value must be sufficient to rescue or reclaim.

*Properly established.*

Whether the constitutionally valid definition of obscenity is, as the writer would make it, that of "hard core pornography," or, as the majority of this court elects, the *Roth* definition, the definition does no more than set the standard or prescribe the test for determining whether a particular article, photograph or publication is obscene. The writer concurs completely with the majority holding that this is an initial fact determination to be made by the jury or trier of fact. The writer joins the majority in seeing merit to the Chief Justice WARREN-Justice CLARK statement that ". . . once a finding of obscenity has been made below under a proper application of the *Roth* test, . . ." the scope of review [11] should be ". . . a 'sufficient evidence' standard of review—requiring something more than merely any evidence but something less than 'substantial evidence on the record [including the allegedly obscene material] as a whole.' " [12] While we have moved a long way from the ancient common-law concept of a jury's exercise of near-limitless discretion in finding facts and establishing damages, we have not travelled far enough to negate the fact-finding function of

---

[11] The situation and scope of review, of course, is identical if the "hard core pornography" definition is adopted as the standard or test.

[12] Mr. Chief Justice WARREN-Mr. Justice CLARK, dissenting, in *Jacobellis v. Ohio* (1964), 378 U. S. 184, 203, 84 Sup. Ct. 1676, 12 L. Ed. 2d 793.

the jury or trier of fact. If a jury is trusted to determine the fact of intent in a first-degree murder case, it ought to be trusted to determine the fact of obscenity under proper instructions and subject to properly limited trial court and appellate court review.

While the writer has a preference for the "hard core pornography" definition of obscenity, rather than the three-pronged *Roth* definition, the writer concurs with the majority that a constitutionally valid definition of obscenity was given to the jury and that the fact of obscenity was properly determined by the jury applying a constitutionally proper test or standard. The writer concurs completely in affirmance.