JUSTICE TRIEWEILER
specially concurring.
I concur with the majority’s resolution of Issues numbered 1, 3, 4, and 5. I specially concur with the majority’s resolution of Issue 2 because although I agree with the result arrived at in that section of the Court’s opinion, I disagree that the District Court erred by submitting underlying factual issues to the jury.
The majority correctly concludes that the opportunity to pursue employment is one of life’s basic necessities, and therefore, a fundamental right guaranteed by Article II, Section 3, of the Montana Constitution. I also agree that before the State can interfere with that fundamental right, it must establish a compelling state interest for doing so and that whether a particular interest, if proven, is “compelling” is a question of law. However, where the very facts which form *308 the basis for the State’s alleged interest are disputed, the resolution of that dispute involves a question of fact.
For example, in this case, the State alleged that its conflict of interest rule served the interest of avoiding the appearance of impropriety by real estate appraisers. Had that fact been established by competent evidence, the determination of whether that fact established a compelling state interest would have been an issue of law. However Wadsworth, and numerous others who were qualified by training and experience, testified that the conflict of interest rule was unnecessary and bore no relationship to public confidence in real estate appraisers. Therefore, whether there was any relationship between the conflict of interest rule and public confidence raised ah issue of fact which must necessarily be decided by the finder of fact — in this case, the jury. As pointed out by the majority, § 26-1-202, MCA, provides as follows:
If a trial is by jury, all questions of fact other than those mentioned in 26-1-201 must be decided by the jury, and all evidence thereon must be addressed to them, except as otherwise provided by law. If the trial of a question of fact is not by jury, all evidence thereon must be addressed to the trial court, which shall decide such question.
That underlying questions of fact were at issue is evident from the majority’s opinion. In analyzing whether proof was offered of a compelling state interest, the majority opinion repeatedly refers to the evidence at trial. Evidence is considered for the sole purpose of resolving factual issues which are the unique responsibility of juries or the district court, as the case may be.
What the majority has, in effect, held is that in every case involving a constitutional issue with an underlying factual component, this Court is in the best position to resolve the factual issue de novo on appeal. The majority’s position is similar to the position of the majority on the Second Circuit Court of Appeals in United States v. A Motion Picture Film Entitled “I Am Curious-Yellow” (2d Cir. 1968), 404 F.2d 196. In that case, a jury, after being instructed on the constitutional standards for judging obscenity, concluded that the motion picture in question was obscene. The Second Circuit Court of Appeals concluded that:
• [I]n our view obscenity vel non is not an issue of fact with respect to which the jury’s finding has its usual conclusive effect. It is rather an issue of constitutional law that must eventually be decided by the court.
*309 A Motion Picture Film, 404 F.2d at 199.
Based on its own review of the motion picture, the majority of that court concluded that it was not obscene because it did not satisfy the first two parts of the three-part test set forth by the U.S. Supreme Court.
In his dissent from the majority’s disregard for the jury’s fact-finding function, Chief Judge Lumbard made the following remarks, which I believe apply to the majority’s disregard for the jury’s fact-finding function in this case:
My colleagues give no satisfactory explanation why jurors are not as qualified as they to pass upon such questions. The conclusion is inescapable that they really think that the issue of obscenity can be entrusted to juries only if the judges themselves (or, as here, a majority of them) think the matters in question go beyond the limits allowed by law. I had not supposed that only those who wear federal judicial robes are qualified to decide whether a motion picture has any redeeming social value.
But the majority would take away from the jury the power to pass on these not too difficult and complicated questions by saying that obscenity is “an issue of constitutional law” rather than an issue of fact with respect to which the jury’s finding has its usual conclusive effect. To me this simply means that juries are not to be trusted where a majority of the judges disagree with them.
... There is no reason to suspect that judges are in any better position to pass judgment on these matters than are jurors. ...
With due deference to the very considerable intellectual attainments of my colleagues, I submit that when it comes to a question of what goes beyond the permissible in arousing prurient interest in sex, the verdict of a jury of twelve men and women is a far better and more accurate reflection of community standards and social value. The jurors are drawn from all walks of life and their less pretentious positions in the community qualify them to answer the questions put to them by Judge Murphy at least as well as circuit judges in their middle sixties who celebrate in the ivory towers of the judiciary.
A Motion Picture Film, 404 F.2d at 203-04 (Lumbard, J., dissenting) (footnotes omitted).
Chief Judge Lumbard’s dissent was cited at length and adopted by the Supreme Court of Wisconsin in Court v. State (1971), 188 N.W.2d *310 475, where that court struggled with the proper scope of review of a jury verdict that printed material was obscene.
After noting Chief Judge Lumbard’s dissent, that court held that: We agree with Mr. Chief Judge Lumbard’s dissent and adopt the principle which he espoused. The determination of obscenity is a factual matter to be resolved by a finder of fact following constitutional guidelines, subject to review by an appellant [sic] court which seeks to determine merely whether the evidence underpinning the verdict was sufficient in view of the record as a whole.
Court, 188 N.W.2d at 483.
In Collier v. Civil Service Commission (Tex. Ct. App. 1989), 764 S.W.2d 364, the Texas Court of Appeals was asked to decide whether “nepotism” rules adopted by the Civil Service Commission for the city of Wichita Falls violated the equal protection clause of the Texas Constitution. The nepotism rule provided that no person could be employed by the fire department if a member of that person’s immediate family was already employed by the department. The city contended that the rule was necessary in order to avoid impairment of one firefighter’s judgment when placed in a situation where a member of that person’s family was in peril.
The Texas court held that to decide the constitutional issue raised by the petitioners, several fact issues must first be resolved, including whether the rule advances legitimate government objectives. (A similar rational basis test would be applied by our Court if a fundamental interest was not at issue.) In holding that underlying factual issues must be resolved by the finder of fact before the constitutional issue could be resolved, the Texas court stated as follows:
Deciding the constitutionality of a statute necessarily involves several related fact questions. See Pine, [Speculation and Reality: The Role of Facts in Judicial Protection of Fundamental Rights, 136 U.Pa.L.Rev. 655 (1988)], 666-67. For example, Wichita Falls argues the nepotism rule will prevent a firefighter’s unavoidable impairment of judgment in a situation where a member of his immediate family is involved in a perilous situation. Appellants argue strong emotional bonds exist between firefighters even if they are not related by blood or marriage. These issues are relevant to whether the nepotism rule will advance the governmental objective of improving the safety of the fire department, but this court does not have any special knowledge of emotional ties between firefighters or the dangers found within burning buildings. This question involves social and emotional issues, but it is still a *311 question of fact. Social facts may be developed through expert testimony, “Brandéis briefs” or requests for judicial notice. Pine, supra at 662-63. We are unwilling to base our decision on the unsupported generalizations contained in the briefs.
The trial court did not make any specific findings of fact; therefore, we do not consider the standard of review for findings of fact in a case involving constitutional rights. See generally, Louis, Allocating Adjudicative Decision Making Authority Between the Trial and Appellate Levels: A Unified View of the Scope of Review, The Judge / Jury Question, and Procedural Discretion, 64 N.C.L.Rev. 993 (1986). Appellants should have the opportunity to introduce evidence to support their challenge to the nepotism rule. Appellants’ third point of error is sustained.
Collier, 764 S.W.2d at 366 (citations omitted).
Likewise, in this case, a factual issue was raised by the State’s contention that its conflict of interest rule was necessary in order to retain public confidence in its real estate appraisers. Before the District Court or this Court could decide whether that need constituted a compelling state interest, someone first had to decide whether the allegation was true. Under our statutory system for resolving factual issues, that responsibility belonged to the jury. Therefore, I would conclude that the District Court did not err when it submitted that issue to the jury based on the proper instructions.
I otherwise agree with the majority opinion, including its conclusion that if the District Court did err by submitting issues regarding a compelling state interest to the jury, the error was harmless.
JUSTICE HUNT joins in the foregoing concurring opinion.